IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| RAYMOND SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03-1521-KI |
| | ) | |
| vs. | ) | OPINION |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Sharon Maynard
Swanson, Thomas & Coon
820 S. W. Second Avenue, Suite 200
Portland, Oregon 97204

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Craig J. Casey
Assistant United States Attorney
1000 S. W. Third Avenue, Sutie 600
Portland, Oregon 97204-2902

Carol A. Hoch
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

## INTRODUCTION

Plaintiff Raymond Sanchez brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability, disability insurance benefits, and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC §§ 405(g) and 1383(c)(3). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Sanchez alleges disability since May 25, 1999, due to musculoskeletal and pulmonary problems, and depression. His chronic neck and back pain are the result of a suicide attempt when he jumped off the Ross Island Bridge.

Sanchez was born in 1964, and he was 39 years old on the date of the ALJ's decision. He received an eighth grade "limited" education, and has past work experience as a shipyard laborer, auto detailer, and auto body painter's helper.

Dr. Crossen examined Sanchez at the request of the ALJ on April 3, 2001. Dr. Crossen reported Sanchez's test results likely underestimate his true abilities in light of the results of his Validity Indicator Profile ("VIP"). According to Dr. Crossen, Sanchez was performing at a borderline to low average in his intellectual functioning, and the VIP test revealed malingering. Dr. Crossen's diagnoses included major depression, malingering, and anti-social personality disorder.

Dr. Burns examined Sanchez twice, in May of 2000 and again in August of 2002 at the request of Sanchez's counsel. In his first evaluation, Dr. Burns diagnosed major depression, mild mental retardation, memory deficits, and alcohol abuse in remission. As a result of the depression and cognitive problems, Dr. Burns opined that Sanchez was not employable, and was at substantial risk for future suicide attempts. Dr. Burns' second examination, which occurred after the ALJ's decision, revealed the same diagnoses. In his report, he remarked that the later test results were "very, very similar" and "extremely consistent" with the first test results. Tr. 695. Dr. Burns tested Sanchez for malingering, and the results indicated no symptoms of exaggeration or malingering. Finally, Dr. Burns offered some criticism of Dr. Crossen's evaluation, including the use of the VIP test on an individual with mental retardation. The Appeals Council made this second report part of the record.

Dr. Horstman has been treating Sanchez since June of 1999. In a letter to Sanchez's then-counsel, Dr. Horstman diagnosed Sanchez with major depressive disorder. She also opined that Sanchez would not be able to "function effectively in a work environment." Tr. 501. She referred to Dr. Burns' first test results, stating that the low scores could be due to impaired

cognitive functioning, or could be the result of depression or lack of rapport with the technician. She recommended that Dr. Burns test Sanchez again.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 CFR § 416.920. The first three steps of the process are not disputed in this case.

If the adjudication proceeds beyond step three, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR § 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

At step four the Commissioner will find the claimant not disabled if he retains the RFC to perform work he has done in the past. 20 CFR § 416.920(f).

If the adjudication reaches step five, the Commissioner must determine whether the claimant can perform other work that exists in the national economy. Yuckert, 482 U.S. at 142; 20 CFR § 416.920(g). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. Tackett v. Apfel, 180

Page 4 - OPINION

F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 416.966.

## THE ALJ's FINDINGS

In the undisputed first three steps, the ALJ found that Sanchez: (1) has not engaged in substantial gainful activity since his alleged disability onset date; (2) suffers from impairments that are severe within the meaning of the Act, which the ALJ identified as status post compression fracture of the lumbar spine at L1 with chronic back pain, a bipolar disorder, and alcohol abuse/dependence in remission since December 1999; and (3) has a combination of impairments that do not satisfy the criteria for any presumptively disabling condition enumerated in the regulatory Listing of Impairments.

The ALJ assessed Sanchez with the RFC to perform light work, limited to work which allows Sanchez to sit or stand at will, to the performance of simple, repetitive tasks, and occasional contact with co-workers and the general public.

At step four, the ALJ found that Sanchez could not return to past relevant work. At step five, the ALJ found that Sanchez retained the RFC to perform a significant range of light work in the national economy. He identified examples of such work drawn from the testimony of an impartial vocational expert ("VE"), including as a small products assembler, a packager, a bench worker, and a polisher. Accordingly, the ALJ concluded that Sanchez is not disabled and not entitled to DIB or SSI benefits under Titles II and XVI of the Act.

The ALJ reported the following about the opinions of Drs. Crossen, Burns and Horstman:

> In reaching conclusions regarding the claimant's limitations from mental impairments, I have . . . considered the April 2000 opinion of treating psychologist Caleb Burns, Ph.D., that the claimant would not be able to sustain

competitive employment due to significant cognitive and memory deficits. (Exhibit 15F). Similarly, in January 2001, Ann M. Horstman, Ph.D., opined that the claimant's ability to stay on task is severely impaired. Dr. Horstman suggested that if the results of cognitive testing performed by Dr. Burns were valid, the claimant's vocational rehabilitation plans should be reconsidered. (Exhibit 16F). Pursuant to SSR 96-2p the opinion of a treating psychologist is entitled to controlling weight if it is consistent with the substantial evidence in the record. Treating psychologist Dr. Horstman's opinion, however, is entitled to little weight in view of the results of neuropsychological testing performed by Dr. Crossen on April 3, 2001, which suggest that the results of Dr. Burns' testing were not valid. Dr. Crossen made a diagnosis of malingering based on the results of validity testing. (Exhibit 17F). I rely on the opinion of Dr. Crossen that the claimant is likely exaggerating his deficits. Dr. Burns' opinion that the claimant suffered a traumatic brain injury related to his suicide attempt is also not well reasoned as Dr. Crossen pointed out that medical records indicate the claimant did not lose consciousness at that time. (Exhibit F4, page 67). Again, Dr. Burns made no effort whatsoever to perform any validity testing, and relied on the claimant's representations and apparent effort only.

## **STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute

its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

Sanchez challenges the ALJ's evaluation of the evidence in support of the RFC assessment. Specifically, Sanchez asserts that the ALJ improperly discredited Dr. Burns' 2000 opinion by relying on Dr. Crossen's validity testing, and by asserting that Dr. Burns should have performed his own validity testing on Sanchez. Dr. Burns' 2002 opinion criticized Dr. Crossen for using the VIP test on a person with an IQ in the mentally retarded range. In addition, the ALJ discredited Dr. Burns' 2000 opinion that Sanchez may have experienced a traumatic brain injury in his suicide attempt because, as the ALJ pointed out, Sanchez never lost consciousness. However, according to Sanchez, Dr. Burns simply suggested that Sanchez's memory problems could be attributable to a head injury. Finally, Sanchez argues that the ALJ improperly discredited Dr. Horstman's opinion. The ALJ asserted that Dr. Horstman relied on Dr. Burns' cognitive test results, which the ALJ deemed invalid due to Dr. Crossen's validity testing. Sanchez again reports that according to Dr. Burns' second opinion, validity testing is inappropriate on an individual with an IQ in the mentally retarded range.

The Commissioner agrees that the ALJ improperly evaluated the opinions of Drs. Burns and Horstman. However, the Commissioner attributes the subsequent opinion of Dr. Burns, submitted to the Appeals Council, as necessitating a remand. The Commissioner asserts that the ALJ's reasoning was specific and legitimate prior to Dr. Burns' second opinion. The Commissioner requests a remand for a supplemental hearing, to be conducted by a different ALJ, at which medical expert testimony can be received as to the validity of tests administered by Drs.

Burns and Crossen, and to address the conflicts between their opinions. In addition, the ALJ should receive testimony from a VE based on a hypothetical question containing all of Sanchez's limitations. In contrast, Sanchez asserts that further proceedings are not necessary.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000). Generally the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings. Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

While the Commissioner concedes that Dr. Burns' second opinion undermines the ALJ's decision to discredit the opinions of Drs. Burns and Horstman, there are several issues to be resolved before a determination of disability can be made. First and most important, there is the issue of the appropriateness of the ALJ's reliance on Dr. Crossen's validity testing on an individual with an IQ in the mentally retarded range to discredit the opinions of Drs. Burns and Horstman. As explained in Harman, "While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that [the claimant] is entitled to benefits as a matter of

Page 8 - OPINION

law." 211 F.3d at 1180. In addition, the Commissioner points out that the ALJ neglected to discuss several medical source opinions. The ALJ noted only one of two GAF scores assigned by Michael B. Willet, M.D., who treated Sanchez in March and April 2001, and the ALJ failed to describe the weight given to Dr. Willet's assessment. Furthermore, the ALJ did not discuss the opinion of R. Harlan Bridenbaugh, M.D.

Because there are issues to be resolved before a finding of disability can be made, I remand to a different ALJ[1] to hold a de novo hearing at which medical expert testimony can be received as to the validity of tests administered by Drs. Burns and Crossen, and address the conflicts between their opinions. A resolution of the conflict between Drs. Burns and Crossen will affect the weight given to Dr. Horstman's opinion. In addition, the ALJ should receive testimony from a VE based on a hypothetical question containing all of Sanchez's limitations.

## CONCLUSION

The decision of the Commissioner is reversed and defendant's motion for remand (#15) is granted. This action is remanded to the Commissioner under sentence four of U.S.C. § 405(g) for rehearing consistent with this opinion. Judgment will be entered.

Dated this ___6th___ day of June, 2005.

                                          __/s/ Garr M. King__
                                          Garr M. King
                                          United States District Judge

---

[1] As the Commissioner points out, a different ALJ is warranted here due to the ALJ's stated personal knowledge of and "conflict" with Dr. Burns. Tr. 713.